IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KOREY RANDLE, | ) | CASE NO. 3:19cv1166 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN NEIL TURNER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Korey Randle ("Petitioner" or "Randle") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Randle is detained at the North Central Correctional Complex, having been found guilty by a Marion County, Ohio, Court of Common Pleas jury of one count of aggravated robbery and one count of kidnapping. *State v. Randle*, Case No. 16-CR-596 (Marion Cty. Common Pleas Ct.). The trial court sentenced Randle to 10 years for aggravated robbery and 5 years for kidnapping, to be served consecutively, for a total of 15 years in prison. Doc. 9-1, p. 50.

On May 21, 2019, Randle filed his Petition for Writ of Habeas Corpus setting forth four grounds for relief. Doc. 1. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Randle's grounds are not cognizable and/or fail on the merits. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

## I. Factual and Procedural Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Marion

County Court of Appeals, Third Appellate District of Ohio:

{¶ 2} At 7:00 in the morning on July 22, 2017, Matthew Thomas ("Thomas") left work and returned to his home on Cherry Street in Marion, Ohio. Trial Tr. 315. At roughly 10:00 that morning, Randle came to Thomas's house for a visit. *Id*. at 317. According to Thomas, he and Randle, at some point that morning, decided to commit a robbery. *Id*. at 322. They got in Thomas's car—which was a maroon Chrysler PT Cruiser with flames decaled on the front—and drove to Randle's house. *Id*. at 322, 354. Thomas testified that they picked up jumpsuits at Randle's house and then drove to Al's Country Market. *Id*. at 322, 324.

{¶ 3} Once they arrived at Al's Country Market, Thomas parked in the lot in front of the store. *Id*. at 324. Thomas testified that he got out of the car and walked into the front door of the store while Randle walked around the back of the store. *Id*. at 325. When Thomas entered the store, no one was behind the counter. *Id*. at 148, 326–327. Thomas testified that he then saw Randle walk around the corner with an employee of Al's Country Market—who was Paulette Bullion ("Bullion")—walking in front of him at knife point. *Id*. at 326–327.

{¶ 4} Thomas testified that he and Randle yelled orders to Bullion. *Id*. at 327. Bullion testified that, at this point, the two men ordered her to put the money from the register into a bag. *Id*. at 174. Once Bullion had emptied the contents of the cash register and the lottery box into a plastic bag, Thomas told Bullion to go to the back of the store. *Id*. at 349. Randle, holding his knife, walked Bullion to the back of the store where he directed Bullion to go into a closet. *Id*. at 352. Thomas and Randle then pushed a table and chair in front of the door. *Id*. at 352. After the table was secured in front of the door, Thomas grabbed Bullion's purse off of the table, and Randle and Thomas exited the store. *Id*. at 352–353. Shortly after Thomas and Randle left, a customer entered the store. *Id*. at 152. Bullion, from inside the closet, called out to the customer, who let Bullion out of the closet. *Id*. Bullion then called the police. *Id*.

{¶ 5} Thomas testified that he and Randle then drove out of the parking lot of Al's Country Market and went to the house of Iris Rogers ("Rogers"), who was Randle's cousin. *Id*. at 327, 426. At Rogers's house, Randle gave Thomas his half of the money that they had stolen from Al's Country Market. *Id*. at 332. Thomas stated that he spent this money on cocaine at Rogers's house. *Id*. at 332. From this location, Thomas began driving back to his house on Cherry Street. *Id*. at 334. Law enforcement had, by this time, identified the maroon PT Cruiser that Thomas drove to Al's Country Market as belonging to Thomas and were searching for Thomas. *Id*. When Thomas drove onto Cherry Street, the police saw his vehicle and apprehended him. *Id*. Thomas did not cooperate with the sheriff's office in this investigation. *Id*. at 338. He did cooperate with the prosecutor's office after a plea agreement had been negotiated. *Id*. at 378. At this point, Thomas implicated Randle in the offenses that were committed in Al's Country Market. *Id*.

{¶ 6} Randle was indicted on November 17, 2016. Doc. 1. Randle's trial began on February 2, 2017. Trial Tr. 1. At trial, Bullion testified about the incident. *Id*. at 147. On cross examination, she testified about the statement that she gave to the police. *Id*. at 178, 180. The Defense questioned her about a statement she made that indicated that one of the perpetrators sounded as though they had a foreign accent. *Id*. at 180. However, at trial, she explained that the accent sounded like an attempt by the perpetrator to disguise his voice. *Id*. She also stated that the perpetrator sounded clearer as he continued to speak. *Id*.

{¶ 7} At the beginning of Thomas's direct examination, the prosecutor asked Thomas whether he committed the robbery with another person. *Id*. at 310. In response, Thomas said, "I need a minute." *Id*. At this point, the prosecutor asked the trial judge for a brief recess and said, "I don't want to coach him." *Id*. The trial court ordered a recess of ten minutes over the objection of the Defense. *Id*. at 311. After the ten-minute recess, the Defense made a motion for a mistrial, arguing that the jury may have been compromised by this "prejudicial occurrence" and that Thomas should have been prepared to testify prior to coming to court on the day of trial. *Id*. at 311. In response the prosecutor said,

> Your Honor, I don't think it's unusual for an accomplice witness to get cold feet. He's worried about his health and safety. He's worried about the health and safety of his family. I just reminded him that—what he's supposed to be doing here today. He needed to gird his loins for a moment. He's prepared to testify. I don't think a mistrial is necessary. I think that would be the strictest sanction. I don't know that the jury has been compromised at all.

*Id*. at 312. The trial court then overruled the Defense's motion for a mistrial. *Id*.

{¶ 8} Thomas then testified as to why he was "reluctant to testify." *Id*. at 314. Thomas explained that, while he was in the county jail, another inmate was attacked. *Id*. Thomas identified the person who had perpetrated this attack. *Id*. at 314–315. Ten months after Thomas testified in that case, he was called a "snitch" by another inmate who struck him in the face with "a lock in a sock." *Id*. at 315–316. The force of this blow caused scarring to his face and broke his jaw. *Id*. at 315. As the result of this prior incident, Thomas expressed concern at trial that he would be labeled a "snitch" and would be attacked again. *Id*. at 316.

{¶ 9} On cross examination, the Defense discussed several false statements that Thomas had made to the grand jury. *Id*. at 398–407. Thomas admitted that he lied to the grand jury about his involvement in these crimes. *Id*. at 401. On redirect, he testified, however, that he did not lie to the grand jury about Randle's involvement in these crimes. *Id*. at 410, 424. He also pointed to the fact that his statements about Randle's involvement before the grand jury were consistent with his statements before the trial court. *Id*. The Defense also questioned Thomas about his three prior convictions, several false statements he made to the police, his reluctance to testify at trial about Randle's involvement, and the terms of his plea agreement. *Id*. 385, 386, 394, 409–410.

3

{¶ 10} The State also called several witnesses who connected Randle and Thomas to each other on the day of the incident. Kyle J. Hopkins was one of Thomas's neighbors and testified that he saw Randle and Thomas together on the morning of July 22, 2016. *Id*. at 445. Angelo Flores then testified that he saw Randle on Cherry Street shortly after Thomas was arrested and that he gave Randle a ride back to Randle's house. *Id*. at 439, 442. Rogers testified that Randle and Thomas were at her house on July 22, 2016. *Id*. at 427. The prosecution also introduced a recording of a phone call that Thomas made from jail in which he speaks of being with Randle on July 22, 2016. *Id*. at 361. The prosecution also called Peggy Romine ("Romine"), who works at the County Corrections Center, to authenticate documents that showed Randle deposited funds into Thomas's commissary account while Thomas was in jail. *Id*. at 272–273.

*State v. Randle*, 104 N.E.3d 202, 205-207 (Oh. Ct. App. 2018).

**A. Trial Court Proceedings**

On November 17, 2016, a Marion County Grand Jury indicted Randle on one count of aggravated robbery, one count of kidnapping, and one count of theft.  Doc. 9-1, pp. 4-7.  Randle, through counsel, entered a plea of not guilty on all counts.  Doc. 9-1, p. 8.  The case was set for trial.

Prior to trial, Randle, through counsel, filed the following pretrial motions: two motions in limine to prohibit the state from introducing Randle's jail phone call recordings and evidence of other uncharged crimes or acts; a motion to order the state to divulge any considerations or promises made to any prosecution witnesses in exchange for their testimony; and a motion in limine to prohibit the use of additional jail phone call recordings and witnesses not previously disclosed.  Doc. 9-1, pp. 9, 12, 18, 21.  The trial court held a hearing on Randle's motions.  The trial court granted Randle's motion regarding evidence of other uncharged crimes or acts in part; withheld ruling on his motions regarding the jail calls until the issue of the calls came up during trial; observed that the parties had reached an agreement regarding the considerations or promises made to prosecution witnesses; and, regarding Randle's motion to prohibit the introduction of phone call recordings that were disclosed late, determined that the evidence had

been disclosed late, the lateness was not willful, and the remedy was to continue the trial.  Doc. 10-1.

A jury trial was held and Randle was found guilty of aggravated robbery and kidnapping. Doc. 9-1, p. 26.  (The state had dismissed the theft count before trial (Doc. 9-2, p. 128)).  The trial court sentenced Randle to 10 years for aggravated robbery and 5 years for kidnapping, to be served consecutively, for a total of 15 years in prison.  Doc. 9-1, p. 50.

**B. Direct Appeal**

On March 31, 2017, Randle, through counsel, appealed to Third District Court of Appeals, Marion County, Ohio.  Doc. 9-1, pp. 52, 66.  In his brief, he raised the following assignments of error:

1. The offenses of aggravated robbery and kidnapping should have merged in this matter.

2. In this matter, the state violated an ethical duty to reveal that the indictment in this matter was based on perjured testimony, demonstrate that the perjury had been remedied before proceeding to trial, and reveal any promises of immunity regarding such perjury.

3. The trial court improperly overruled appellant's motion for a mistrial regarding the State's request for a recess to bolster their witness's testimony.

4. The jury's decision to convict the appellant was against the manifest weight of the evidence.

Doc. 9-1, p. 67.  On January 22, 2018, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. 9-1, pp. 120-142.

Randle, pro se, appealed to the Ohio Supreme Court.  Doc. 9-1, p. 145.  In his memorandum in support of jurisdiction, he asserted the following propositions of law:

I. Mr. Randle's Aggravated Robbery and Kidnapping were contrary to law and in violation of the Fifth and Fourteenth Amendment, and should have been merged.

II. The State violated an[] ethical duty to reveal that the indictment in this case was based on perjured testimony, Demonstrate that perjury had been remedied before proceeding to trial, and reveal any promises of immunity regarding such perjury, violating Mr. Randle's right to an impartial and fair trial, and right to due process.

5

III. The trial court improperly overruled Mr. Rand[le]'s Motion for a Mistrial in regards to the State's request for a recess to bolster their witnesses [sic] testimony violating defendant's constitutional right to a fair trial and due process.

IV. The jury erred in finding Mr. Randle guilty of Aggravated Robbery and Kidnapping where those convictions were based on insufficient evidence and against the manifest weight of the evidence.

Doc. 9-1, p. 149.  On June 6, 2018, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 9-1, p. 190.

### C. Federal Habeas Petition

On May 8, 2019, Randle filed a Petition for a Writ of Habeas Corpus.  Doc. 1.  He listed the following grounds for relief:

**Ground One**: Petitioner's 5th, 6th, and 14th Amendment Rights were violated when the Trial Court sentenced him to separated sentences, when the alleged crimes were committed together (Allegedly).

**Ground Two**: The state violated Petitioner's due process constitutional rights when it failed to reveal that the indictment against him was based on perjury testimony.  And failed to demonstrate that testimony had been remedied before trial reveal no promises of immunity, violated his 5th and 14th Amendment.

**Ground Three**: Petitioner's due process rights and rights to a fair trial were violated by Court failure to grant a mistrial when the Court granted a recess to bolster the testimony of the state witness violating his 5th, 6th and 14th Amendment to the U.S. Const.

**Ground Four**: The evidence against petitioner was against the manifest weight of justice and insufficient to convict violating his 5th, 6th, and 14th Amendment of the U.S. Const.

Doc. 1, pp. 5-9.

Respondent filed a Return of Writ, arguing that Randle's grounds are not cognizable and fail on the merits.  Doc. 9.  Randle filed a reply.[1]  Doc. 12.

### II. Legal Standard

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that

---

[1] Randle's filing is entitled "Crossclaim"; in it he responds to each of Respondent's arguments regarding his grounds for relief.

the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Analysis

### A. Ground One is not cognizable; alternatively, it fails on the merits

In Ground One, Randle argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court sentenced him to separate sentences when the two crimes—aggravated robbery and kidnapping—were committed together. Doc. 1, p. 5. He contends that robbery and kidnapping counts should have merged because they are crimes of similar import, relying on Ohio Revised Code provisions and Ohio case law. Doc. 12, pp. 3-4. Respondent argues that Ground One is not cognizable. Doc. 9, pp. 12-17.

Ground One is not cognizable because Randle challenges his sentence based on Ohio sentencing laws and the interpretation of those laws (such as consecutive sentences) is not cognizable on federal habeas review. *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010) (lower federal court's consideration of Indiana state court's interpretation of Indiana sentencing laws was improper on federal habeas review); *Oregon v. Ice*, 555 U.S. 160, 163 (2009) (states may permit trial court judges the discretion to order consecutive sentences after making a factual determination).

Additionally, Ground One fails on the merits.  The Ohio Court of Appeals explained,

*First Assignment of Error*

{¶ 12} In his first assignment of error, Randle argues that the offenses of kidnapping and aggravated robbery should have merged upon sentencing because these acts were committed together and there was "not * * * a point in which one offense ends and the other offense begins." Appellant's Brief, 4. Specifically, the Defense argues that the robbery began when the appellant brandished a weapon in front of the victim and ended when the appellant took the victim's purse and left the store. The Defense contends that the appellant ordered the victim into a locked closet in between the two events that constituted the beginning and end of the robbery. Thus, he claims that these two offenses should merge because the robbery had not ended by the time he committed the crime of kidnapping.

*Legal Standard*

{¶ 13} "Both R.C. 2941.25 and the Double Jeopardy Clause prohibit multiple convictions for the same conduct." *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 28, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 27. R.C. 2941.25 reads:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(A), (B).

{¶ 14} Under Ohio law, if a defendant is charged with allied offenses—which are multiple crimes committed with the same conduct—the "trial court is required to merge [these offenses] at sentencing." *Sergent* at ¶ 28, quoting *Underwood* at ¶ 27. To determine "whether two offenses are...subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 16, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus.

{¶ 15} "If the offenses are committed with the same conduct but with a separate animus, multiple convictions can be sustained." *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 28 (3d Dist.), citing *State v. Hadding*, 3d Dist. Auglaize No. 2-12-14, 2013-Ohio-643, 2013 WL 684655, ¶ 14. "The Supreme Court of Ohio has defined animus as "purpose, or more properly, immediate motive." *Brentlinger* at ¶ 28, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo." *State v.*

*Potts*, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 93, citing *State v. Stall*, 3d Dist. Crawford No. 3-10-12, 2011-Ohio-5733, 2011 WL 5353506, ¶ 36.

*Legal Analysis*

{¶ 16} In this case, the offenses of robbery and kidnapping were each committed with a separate animus.[1] The crime of robbery often involves the crime of kidnapping. *State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29. As Randle was leading Bullion towards the front of the store at knife point, he was kidnapping her for the purpose of facilitating a robbery. At this point, the two offenses were committed pursuant to the same animus: Randle's intent to perpetrate a robbery motivated him to commit the offense of kidnapping. However, after Bullion had emptied the contents of the cash register and the lottery box into the bag, Randle ordered Bullion into the back room where he locked her in a closet.

> [FN1] Under *Ruff*, "offenses do not merge unless they involve (1) the 'same conduct,' (2) a 'similar import,' and (3) a single 'animus.'" *Ruff* at ¶ 38. Thus, the Defense's argument fails if any one of these three factors is absent in this case. Since we find that the facts of this case clearly demonstrate that the offense of kidnapping was committed with a separate animus from the offense of robbery, we will limit our analysis to determining whether these offenses had separate motivations, and we will not analyze the facts of this case to determine whether the other two factors are present.

{¶ 17} While walking Bullion to the front of the store at knife point was incidental to the crime of robbery, walking her to the back of the store at knife point and then locking her in a closet was not a part of facilitating the robbery. The offense that was committed when Randle locked Bullion in a closet was not necessary to further the robbery and was not incidental to the commission of the robbery. Rather, this separate series of actions was undertaken for the purpose of facilitating Randle's escape. His intent to commit a robbery was no longer what animated his actions. At the time the robbery was completed, his "immediate motive" changed: he was now motivated by a desire to evade apprehension. Locking Bullion in a closet prevented her from notifying the authorities and gave him more time to escape. Since a different animus motivated each of these offenses, the crime of kidnapping in violation of R.C. 2905.01(A)(2) was committed in addition to the crime of robbery. These crimes are not, therefore, allied offenses subject to merger. For these reasons, Randle's first assignment of error is overruled.

*Randle*, 104 N.E.3d 202, 207–09.

Randle maintains that his motivation for locking Bullion in the closet was to escape and avoid apprehension, which was part of his conduct in committing robbery. Doc. 12, pp. 3-4. But that argument is relevant to whether Randle had a separate animus for the two crimes, which is an argument challenging Ohio law and is not cognizable, as explained above.

To the extent Randle's arguments could be construed as a challenge under the double jeopardy clause of the Fifth Amendment, his claim fails on the merits.  The Ohio Court of Appeals' determination that aggravated robbery and kidnapping were not allied offenses subject to merger was not contrary to nor an unreasonable application of Supreme Court precedent.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *Brown v. Smith*, 2014 WL 1493123, at *21 (N.D.Oh. Apr. 11, 2014) (no double jeopardy violation under *Blockburger* for aggravated robbery and kidnapping because "each offense contains an element not contained in the other.").  As relevant here, aggravated robbery (R.C. § 2911.01(A)(1)) requires the use of a deadly weapon in committing a theft offense or in fleeing immediately after the attempt or offense and kidnapping (R.C. § 2905.01(A)(2)) requires removing another from the place where she is found or restraining her liberty to facilitate the commission of any felony or flight thereafter.  It was not necessary to lock Bullion in the closet to commit the crime of aggravated robbery and it was not necessary to use a deadly weapon to commit the crime of kidnapping.  *See also id*.

Thus, to the extent the Court considers Ground One on the merits, Ground One fails.

**B. Ground Two fails on the merits**

In Ground Two, Randle argues that the state violated his due process rights when it failed to reveal that the indictment against him was based on perjured testimony.  Doc. 1, p. 6; Doc. 12, p. 4.  He explains that the state's witness, Mr. Thomas, admitted at trial that he had lied to the grand jury.  Doc. 12, p. 4.  Respondent argues that this claim is not cognizable and/or fails on the merits.  Doc. 9, p. 17.

The Ohio Court of Appeals considered the issues raised in Ground Two as follows:

11

*Second Assignment of Error*

{¶ 18} In his second assignment of error, Randle argues that the State violated several ethical duties while prosecuting this case. First, the Defense alleges that the State used testimony that contained perjury to secure an indictment against the appellant. Second, the Defense claims that the State did not disclose the fact that the grand jury heard testimony that contained perjury, which, according to the Defense, was evidence that was favorable to the defendant under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Third, the Defense suggests that the State may have granted immunity to one of the key witnesses against Randle without disclosing this fact. We will address each of these arguments in turn.

*Legal Standard for the Perjury Issue*

{¶ 19} R.C. 2921.11 defines the offense of perjury and reads, in its relevant part, as follows:

> (A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material.

> (B) A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed a falsification to be immaterial.

"Based upon the plain language of R.C. 2929.11(B), a false statement is material if it can affect the outcome of a proceeding. R.C. 2929.11(B) does not require that the outcome actually be affected." (Emphasis sic.) *State v. Douglas*, 3d Dist. Marion No. 9-05-24, 2005-Ohio-6304, 2005 WL 3150302, ¶ 14.

*Legal Analysis for the Perjury Issue*

{¶ 20} Randle's first argument alleges that the prosecution based its indictment on perjured testimony from Thomas. While the Defense cross examined Thomas, defense counsel introduced the false statements that Thomas made to the grand jury. Further, Thomas admitted at trial that he had lied to the grand jury in making these statements. However, these false statements did not constitute perjury as these were not material statements. *See State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, 2013 WL 142041, ¶ 41, quoting *Monroe v. Smith*, 197 F.Supp.2d 753, 762 (E.D.Mich. 2001) (holding "the fact 'that a witness contradicts [himself] or changes [his] story also does not establish perjury.'"). The grand jury was convened to determine whether an indictment should be issued against Randle. Thus, in this context, a false statement would have had to have been able to affect the decision as to whether an indictment should be issued against Randle in order to be material.

{¶ 21} The false statements that Thomas made did not address Randle's activities in the matter before the grand jury. Rather, the false statements that Thomas made to the grand jury addressed his involvement in this crime and marginalized his role in committing this offense. The statements that Thomas made to the grand jury about Randle's criminal activities were consistent with the statements that he made about Randle at trial. In the

absence of these false statements, the indictment would not have been based on insufficient evidence. *See State v. Cruise*, 4th Dist. Washington No. 85–CA–28, 1987 WL 7009, *4 (Feb. 24, 1987),[2] citing 2 La Fave Criminal Procedure 312 Sec. 15. Since the grand jury was considering whether to indict Randle, these particular false statements could not have had an effect on the outcome of the proceeding because the false statements did not address Randle's activities. *Compare State v. Wimbush*, 5th Dist. Richland No. 2005CA0024, 2005-Ohio-6436, 2005 WL 3293769, ¶ 15. Thus, the prosecution did not violate an ethical duty in this regard as alleged by Randle.

> [FN2] In *Cruise*, the Court held, "No Ohio cases have been cited and we are unaware of any which authorizes dismissal of an indictment because perjured testimony was presented to the grand jury." *Cruise* at *4. Similarly, in this case, appellant does not cite any Ohio law. Rather, appellant argues that the indictment should have been dismissed as this is the practice in federal court. Since we have determined that the indictment was not based upon perjured testimony, we need not address the argument that this Court should follow the practices of federal courts.

*Legal Standard for the Brady Violation Issue*

{¶ 22} A *Brady* violation occurs "[w]hen the prosecution withholds material, exculpatory evidence in a criminal proceeding * * *." *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). *See Brady, supra*, at 86–87, 83 S.Ct. 1194. Specifically, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady, supra*, at 87, 83 S.Ct. 1194.

> [I]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*Johnston* at 61, 529 N.E.2d 898, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The defendant has the burden to prove a *Brady* violation rising to the level of a due-process violation." *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 102.

*Legal Analysis for the Brady Violation Issue*

{¶ 23} In his second argument under this assignment of error, Randle alleges that the prosecution committed a *Brady* violation by failing to disclose the perjured statements made by Thomas to the grand jury. The Defense, however, did not carry the burden of establishing that a due process violation occurred because the Defense cannot demonstrate that there is a reasonable probability that the outcome would have been different had the Defense received these statements in a different manner. *See Johnston* at 61, 529 N.E.2d 898.

{¶ 24} By the time of trial, the Defense had the false statements that Thomas made to the

13

grand jury in their possession and had time to review these statements before Thomas testified. *See State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001), citing *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913, 917 (1990). Further, the Defense was able to introduce these false statements on cross examination while Thomas was testifying. Since the Defense had these statements by the time of trial and introduced them on cross examination, Randle cannot establish a due process violation in this case because the Defense did not show how the manner in which the Defense received these statements would have affected the outcome of the case.

*Legal Standard for Alleged Promise of Immunity Issue*

{¶ 25} "App.R. 9(A)(1) limits the record on appeal to '[t]he original papers and exhibits thereto filed in the trial court, the transcript of the proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *.'" *State v. White*, 3d Dist. Seneca No. 13-14-29, 2015-Ohio-817, 2015 WL 1000342, ¶ 16, quoting App.R. 9(A)(1). *See State v. Snyder*, 3d Dist. Seneca No. 13-12-38, 2013-Ohio-2046, 2013 WL 2152555, ¶ 16. "Since a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings." *State v. Ishmail*, 54 Ohio St.2d 402, 405–406, 377 N.E.2d 500, 502 (1978). "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *Id*. at syllabus.

*Legal Analysis for Alleged Promise of Immunity Issue*

{¶ 26} In this argument, the Defense alleges that the prosecution may have given Thomas a promise of immunity in exchange for his testimony at trial and failed to disclose this alleged immunity agreement. However, no evidence in the record suggests a promise of immunity was extended to Thomas. On direct appeal, our review of the trial court's determinations is limited to the contents of the record. The Defense did not present any information at trial that would substantiate this claim, making this argument purely speculative.

{¶ 27} Under this assignment of error, Randle advanced three arguments that purportedly supported the assertion that the State violated various ethical duties in this prosecution of this case. However, after examining these three arguments, we do not find evidence that the State violated its ethical duties as alleged by appellant. For this reason, Randle's second assignment of error is overruled.

*Randle*, 104 N.E.3d at 209-211.

In his response, Randle challenges the Ohio Court of Appeals' determination on the

perjury issue, to wit: that Thomas' perjury was not material. He argues that Thomas' false

statements to the grand jury not only addressed Thomas' involvement in the crime, "but also

implicated Randle's involvement which was totally inaccurate." Doc. 12, p. 5. He asserts that

Thomas' implication of him in the robbery "from beginning to end is unreliable and did effect [sic] the outcome at trial."  Doc. 12, p. 5.  He does not identify what portions of Thomas' statements were "totally inaccurate" or "unreliable" such that they affected the outcome at trial.

In his brief on appeal to the Ohio Court of Appeals, Randle had argued that Thomas' grand jury testimony was false and material because he highlighted Randle's role in the robbery and downplayed his own.  Doc. 9-1, pp. 75-76.  Randle had argued that Thomas testified to the grand jury that the robbery was Randle's idea and that he, Thomas, was an unwilling participant: and that Randle drove himself and Thomas to the market and Thomas was tricked into participating.  Thomas testified to the grand jury that he had not seen the store clerk forced into the closet and he had not taken her purse.  But at trial, Thomas testified that he and Randle had planned the robbery, Thomas had driven them to the market, Thomas helped barricade the store clerk in the closet, and Thomas took her pursue.  See also Doc. 9-3, pp. 33-67, 79, 105-120 (Thomas' trial testimony).

Thomas' false statements to the grand jury downplaying his own role in the robbery do not pertain to his testimony regarding Randle's relevant actions, which was consistent in all material respects to his trial testimony, as the Ohio Court of Appeals found.  Randle and Thomas went to the market in jumpsuits and masks, Randle held the store clerk at knifepoint and told her to hand over the money from the cash register, both of them barricaded the store clerk in the closet, and both of them fled with the money and the clerk's purse in Thomas' car.  The false statements made by Thomas regarding who planned the robbery, who took the clerk's purse, and whether or not Randle, alone or with Thomas' help, barricaded the store clerk in the closet was not material to the following, pertinent facts: that Randle had a knife, robbed the store, and barricaded the store clerk in the closet.  Those actions were sufficient to charge Randle with aggravated robbery and kidnapping, and the Ohio Court of Appeals' determination was not an

15

unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts.  Ground Two fails on the merits.

### C. Ground Three fails on the merits

In Ground Three, Randle argues that his due process rights and rights to a fair trial were violated when the trial court failed to grant a mistrial after it allowed the state to take a recess to bolster the testimony of its witness, Thomas.  Doc. 1, p. 8.  Randle contends that the prosecutor impermissibly coached Thomas during the recess.  Doc. 12, p. 6.  Respondent asserts that Ground Three fails on the merits.  Doc. 9, pp. 26-31.

The Ohio Court of Appeals considered Randle's claim as follows:

*Third Assignment of Error*

{¶ 28} In his third assignment of error, Randle asserts that [the] trial court erred by failing to grant his motion for a mistrial after the State asked for a recess to speak with one of its witnesses. Randle claims that the State requested this recess "for the specific purpose of affecting [a] witness's testimony." Appellant's Brief, 8. While the State explicitly stated that it was not going to coach Thomas, Randle alleges that the recess "seemed to be aimed at talking to the witness about how he should testify." *Id*. Randle contends that this practice violated his due process rights, his right to a fair trial, and his right to confrontation.

*Legal Standard*

{¶ 29} "The grant or denial of a mistrial lies within the sound discretion of the trial court. However, a trial court need not declare a mistrial unless 'the ends of justice so require and a fair trial is no longer possible.'" *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 173, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Thus, a trial court's decision to deny a motion for a mistrial will not be reversed absent an abuse of discretion. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634 (1995). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Ortega*, 3d Dist. Hancock No. 5-16-17, 2017-Ohio-239, 2017 WL 277560, ¶ 10, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149 (1980). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *State v. Thompson*, 2017-Ohio-792, 85 N.E.3d 1108, ¶ 11, quoting *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

*Legal Analysis*

{¶ 30} In this argument, the appellant asserts that the trial court should have declared a mistrial after the prosecution requested a recess to speak with Thomas, alleging that the State coached Thomas during the recess. First, we note that the trial was an adversarial

proceeding in "which the defense counsel was free to explore upon examination any coaching or preparation of the [S]tate's witnesses." *State v. King*, 3d Dist. Seneca No. 13–01–20, 2002 WL 479159, *3 (March 29, 2002).

> The opposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses. A prosecutor may cross-examine a defendant as to the extent of any 'coaching' *during a recess*, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, *if* it had developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination.

(Emphasis added.) *King* at *3–4, quoting *Geders v. United States*, 425 U.S. 80, 89–90, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

{¶ 31} Second, the record does not suggest that Thomas was coached during the recess. *See State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647, 2013 WL 1777258, ¶ 51–52. On cross examination, the Defense questioned Thomas about the terms of his plea agreement and his reluctance to testify. Trial Tr. 409–410. In this process, the Defense questioned Thomas about whether his plea agreement was discussed during the recess, but the Defense did not ask questions inquiring into whether Thomas was coached during the recess. *Id*. For this reason, there is no evidence in the record that suggests that Thomas was coached during the recess. While the Defense alleges on appeal that the purpose of the recess was to coach Thomas, this assertion is speculative as no facts in the record support this claim. On direct appeal, our review is limited to matters in the record. *State v. Martin*, 151 Ohio App.3d 605, 2003-Ohio-735, 784 N.E.2d 1237, ¶ 53. We cannot reverse a trial court on the basis of speculation about matters outside of the record. *Id*.

{¶ 32} Third, we note that the trial court is given "control [of] all proceedings during a criminal trial * * *." R.C. 2945.03. The trial judge had the discretion to order a recess to ensure that the trial unfolded in an orderly process. *State v. Heiberger*, 6th Dist. Erie No. E–84–54, 1985 WL 7544, *2 (July 19, 1985). We do not find evidence in the record that suggests the trial court abused this discretion in ordering the recess or in denying Randle's motion for a mistrial. For these reasons, Randle's third assignment of error is overruled.

*Randle*, 104 N.E.3d at *211-213.

The Ohio Court of Appeals applied the correct standard of review to Randle's claim that the trial court erred in denying his motion for a mistrial. *See Illinois v. Somerville*, 410 U.S. 458, 461-463 (1973) (it is settled law that the trial court has broad discretion to consider whether to declare a mistrial taking all the circumstances into consideration, citing *U.S. v. Perez*, 9 Wheat.

579 (1824)); *Renico v. Lett*, 559 U.S. 766, 767 (2010).

Moreover, upon federal habeas review of a state court's denial of a mistrial, a grant of the writ is not warranted unless the reason for requesting the mistrial "was potentially so misleading and prejudicial that it deprived [the defendant] of a constitutionally fair trial" *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 641–42 (1974)); *Johnson v. Mitchell*, 585 F.3d 923, 937 (6th Cir. 2009). Randle does not demonstrate that he was deprived of a fair trial. His assertion that there was no other reason for the prosecutor to request a recess other than to coach the witness (Doc. 12, p. 6) is speculative and, in any event, belied by the record. As the Ohio Court of Appeals observed, the reason the prosecutor requested a recess was set forth on the record as follows:

> {¶ 7} At the beginning of Thomas's direct examination, the prosecutor asked Thomas whether he committed the robbery with another person. *Id.* at 310. In response, Thomas said, "I need a minute." *Id.* At this point, the prosecutor asked the trial judge for a brief recess and said, "I don't want to coach him." *Id.* The trial court ordered a recess of ten minutes over the objection of the Defense. *Id.* at 311. After the ten-minute recess, the Defense made a motion for a mistrial, arguing that the jury may have been compromised by this "prejudicial occurrence" and that Thomas should have been prepared to testify prior to coming to court on the day of trial. *Id.* at 311. In response the prosecutor said,
>
>> Your Honor, I don't think it's unusual for an accomplice witness to get cold feet. He's worried about his health and safety. He's worried about the health and safety of his family. I just reminded him that—what he's supposed to be doing here today. He needed to gird his loins for a moment. He's prepared to testify. I don't think a mistrial is necessary. I think that would be the strictest sanction. I don't know that the jury has been compromised at all.

*Randle*, 104 N.E.3d at 206. Upon direct examination, Thomas explained that he had been initially reluctant to testify because, in the past when he had testified against another, a fellow prison inmate called him a snitch and hit him in the face with a lock in a sock, breaking his jaw and leaving visible scarring. *Id.*, at 206; Doc. 9-3, p. 25-27. Because Thomas was going to prison for his role in the robbery, he was concerned that he would be labeled a snitch in prison and be attacked again. Doc. 9-3, p. 27.

Randle has not demonstrated that the Ohio Court of Appeals' decision is unreasonable; Ground Three fails on the merits.

### D. Ground Four: The manifest weight claim is not cognizable; the sufficiency of the evidence claim is procedurally defaulted and fails on the merits

In Ground Four, Randle argues that his convictions were against the manifest weight of the evidence and the sufficiency of the evidence.  Doc. 1, p. 9.

#### 1. Randle's manifest weight claim is not cognizable

Randle's claim that his convictions are against the manifest weight of the evidence is not cognizable.  Federal habeas corpus relief is available only to correct federal constitutional violations, 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010), and a claim that a conviction is against the manifest weight of the evidence rests solely on state law.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)); *Wagner v. Bradley*, 2019 WL 3362013, at *22 (N.D. Ohio May 2, 2019), *report and recommendation adopted*, 2019 WL 2636269 (N.D. Ohio June 27, 2019).

#### 2. Randle's sufficiency of the evidence claim is procedurally defaulted

Randle's claim that his convictions are not supported by sufficient evidence is procedurally defaulted because he did not raise such a claim to the Ohio Court of Appeals on direct appeal.  See Doc. 9-1, pp. 66-80 (brief to the Ohio Court of Appeals).  Although Randle raised this claim in his brief on direct appeal to the Ohio Supreme Court (Doc. 9-1, p. 149), doing so did not "fairly present" this claim.  *Castille v. Peoples*, 489 U.S. 346, 349-351 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his

claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Casey v. Moore*, 286 F.3d 896, 916-918 (9th Cir. 2004) (same, collecting cases); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Oh. 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Thus, Randle failed to fairly present this claim and it is unexhausted; because he may no longer present this claim, it is procedurally defaulted.  *See Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review.").

Randle does not allege cause for his failure to present this claim to the Ohio courts at all levels.  He does not allege prejudice.  And he has not shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Accordingly, his claim is procedurally defaulted.

### 3. Randle's sufficiency of the evidence claim fails on the merits

Randle's claim that his convictions are not supported by sufficient evidence also fails on the merits.  In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the trier of fact's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a

20

determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650 (2012). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In reviewing an insufficiency of the evidence claim, a federal habeas court may consider a state court's manifest weight of the evidence analysis. *Martin v. Robinson*, 2020 WL 7345991, at *3 (6th Cir. Sept. 30, 2020). Here, as the Ohio Court of Appeals explained when discussing Randle's manifest weight claim,

### Fourth Assignment of Error

{¶ 33} In his fourth assignment of error, Randle asserts that the verdict in this case was against the manifest weight of the evidence. In support of this contention, he points to the testimony of several of the State's witnesses. Much of this argument focuses on Thomas's credibility as a witness and on one alleged inconsistency in Bullion's testimony. Based on these "holes" in the State's case, he argues that his conviction was against the manifest weight of the evidence and should, therefore, be reversed.

### Legal Standard

{¶ 34} "In a manifest weight analysis, 'the appellate court sits as a 'thirteenth juror' * * *.'" *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, 2017 WL 2241604, ¶

17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

> On appeal, courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*Brentlinger, supra*, at ¶ 36, quoting *Thompkins* at 387, 678 N.E.2d 541. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, 2014 WL 6725795, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, 982 N.E.2d 111, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

*Legal Analysis*

{¶ 35} The State, at trial, introduced a security camera recording that showed two men robbing Al's Country Market and kidnapping Bullion. Ex. 1. The State also called Bullion to testify about the robbery and the kidnapping. Trial Tr. 149–167. Thomas's testimony, however, is what identified Randle as one of the two men who perpetrated the offenses in the store. *Id*. at 322, 325. Thomas's testimony also provided evidence that substantiated each of the essential elements of aggravated robbery and kidnapping. *Id*. at 322–323, 327, 349–351. Several other witnesses were able to connect Randle to Thomas on the day of the incident and were, thus, able to corroborate aspects of Thomas's account. Hopkins testified that he saw Randle and Thomas together before the incident at Al's Country Market. *Id*. at 445. Flores testified that he saw Randle on the day of the incident at the location on Cherry Street where Thomas was arrested. *Id*. at 438, 442. Rogers testified that Randle and Thomas were at her house on the day of the incident, which corresponded to Thomas's account of what transpired on July 22, 2016. *Id*. at 427. Finally, Romine testified that Randle deposited funds into Thomas's commissary account while Thomas was in jail. *Id*. at 271–272.

{¶ 36} The Defense, while cross examining Thomas, introduced the false statements that Thomas had made to the grand jury. *Id*. at 398–407. These statements showed that Thomas's description of his involvement in this crime at trial and his description of his involvement in this crime to the grand jury were inconsistent. *Id*. Thomas admitted that he had lied to the grand jury and to the police immediately after his arrest. *Id*. at 338, 368. Further, Thomas also admitted that he had a conviction for domestic violence, a conviction for possession of heroin, and a conviction for obstruction of justice. *Id*. at 383. Finally, the Defense questioned Thomas about his reluctance to testify and the terms of his plea agreement. *Id*. at 386–394, 409–410. Similarly, the Defense, while cross examining Bullion, questioned her about whether one of the perpetrators had a foreign accent. *Id*. at 180. In response, Bullion explained that she told the police that the man sounded as though he was trying to disguise his voice with an accent and that he got easier to understand as he spoke. *Id*. at 178, 180.

{¶ 37} After reviewing all of the evidence in the record, we do not find that the verdict was against the manifest weight of the evidence. The jurors, as the finders of fact in this case, could have reasonably found that Thomas's testimony provided an accurate account of Randle's actions on July 22, 2016. Similarly, the jurors could have accepted the explanation that Bullion provided for the alleged contradiction between her statement to the police and her testimony at trial. After examining the record, we do not find evidence in the record that the jury lost its way. For these reasons, Randle's fourth assignment of error is overruled.

*Randle*, 104 N.E.3d at 213–14.

Randle argues that Thomas' testimony was inconsistent in placing him at the scene of the crime. Doc. 12, p. 7. He does not identify any evidence Thomas gave that was inconsistent in this respect. To the contrary, Thomas consistently testified that Randle was at the scene of the crime. His assertion that Thomas and Bullion lack credibility is without merit, as this Court does not re-evaluate the credibility of witnesses. *Brown*, 567 F.3d at 205. His argument that the surveillance video "does not show specifically Randle's face" and his complaint that other witnesses only testified that he and Thomas were together that day also fails, as circumstantial evidence is sufficient to support a conviction. *Johnson*, 200 F.3d at 992. Ground Four fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Randle's habeas Petition

be **DENIED**.

Dated: February 17, 2021

*/s/Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).